Good morning. First District Appellate Court Administrative Court is now in session, the Second Division. The Honorable Justice Nathaniel House presiding, case number 22-0955, People v. Ricky Diggs. Good morning. My name is Nathaniel House. I'm a judge on the Illinois Appellate Court, and presiding over this case with me are Justices David Ellis and Cynthia Cobb. We're proceeding today via Zoom. We're going to follow the following procedure. We're going to allow each side intern to have approximately 10 minutes of uninterrupted presentation, after which we'll ask questions of each side, and the appellant will be given an opportunity to make a short rebuttal. Who is representing the appellant? Please state your name. Zachary Slavens, Your Honor, Assistant State's Attorney on behalf of the people of the state of Illinois. And who's representing the appellee? Good morning. Kathleen Hennessey, H-E-N-N-E-S-S-Y on behalf of Defendant Appellee Ricky Diggs. Do either of you have any questions about how we're going to proceed? No, Your Honor. No. Okay. I'll give you a two-minute signal when you got two minutes left. Okay. With that, then, Mr. Slavens, when you are ready, you may proceed. Good morning, Your Honors, and may it please the Court. My name is Zachary Slavens, and I represent the people of the state of Illinois. Defendant had the opportunity and similar motive to cross-examine Keith Ann Essie when she testified at Defendant's first trial for the murder of Tommy Calvin. The Circuit Court's decision to nevertheless exclude the deceased witness's testimony from Defendant's retrial under Rule 804b1 was an abuse of discretion because no reasonable person would such a fine-grained standard. Accordingly, this Court should reverse the Circuit Court's ruling on the people's motion in limine, because first, the motive and focus of Defendant's first cross-examination of Essie was similar to that which would guide cross-examination on retrial, and second, because Defendant's identification of Miller and Parker does not expand the prospective cross-examination of Essie into areas that were not and could not have been developed at Defendant's first trial. Under Rule 804, a former testimony of an unavailable witness is not excluded by the hearsay rule if the testimony was given at a hearing in the same proceeding or and the party against whom it was offered had an opportunity or similar motive to develop that testimony. As Essie is deceased, she certainly meets the requirement as an unavailable witness. So, this turns on the question of whether or not Defendant had an opportunity and motive to cross-examine Essie at his first trial. And Courts looking at whether or not the Defendant had an opportunity or similar motive under Rule 804 apply a four-factor framework asking whether or not the motive and focus of the prior cross-examination was the same or similar to that which would guide cross-examination at the subsequent trial, if the cross-examination was unlimited, what counsel knew at the time of the first cross-examination, and finally, any restrictions whether overt or covert on the cross-examination. In this case, there is no issue regarding the limit or restrictions on cross-examination. This case turns primarily on counsel's knowledge but in a related way on the motive and focus of the cross-examination as a result. Turning first to the motive and focus, the motive and focus of Essie's first cross-examination in this case was similar to the focus that would guide her cross-examination at retrial. Courts in Illinois have defined this inquiry about motive and focus in broad terms. And the Court in Sutherland explained that motive and focus from an initial proceeding must be the same or similar to that which would guide it in subsequent proceedings. And that court followed the Illinois Supreme Court's articulation of Torres, where the court explained that the same motive and focus exists when the question of both proceedings is whether or not the evidence supports a finding that the defendant committed the charged crime. And Torres further explained that when it comes to eyewitnesses like Essie, a motive and focus is similar between two proceedings when you have motivation to test the credibility, observation, recall of the witness and to try to undermine that testimony in the eyes of the fact finder. And that's certainly what we have here, both in terms of what was that issue during defendant's first trial and in terms of what was actually asked at defendant's first trial. We know defendant had a similar motive to cross-examine Essie because first, counsel did ask questions about Essie's observation, recall, and the credibility of her identification of defendant as the shooter. She was questioned about her drinking at the time, lack of personal acquaintance with defendant. She was questioned about limits on her perspective and observations and her failure to see defendant fire the initial shots or to see where he fled seemed to. Counsel also cross-examined Essie regarding her general credibility and any motives bias she might have when he listed a testimony about her history of drug use, the fact that she was on probation at the time. And counsel also listed a testimony that Essie had actually bought drugs from the victim, knew that the victim worked for one of the other witnesses distributing drugs. So the motive and focus at the first trial was again to get to the and any prejudice bias or motives she may have had. And that is very similar to what this cross-examination of an eyewitness would be at retrial. It would again be to test the witness's recollection, the reliability of her identification. Turning to the second issue with respect to counsel's knowledge, defendant has now identified two individuals who claim to have information that counsel did not know at the time. The addition of their identities does not impact the question of admissibility because their identities do not open new topics for cross-examination that were not and could not have been explored during the first trial. Courts that have looked at what counsel knew or did not know during a prior examination under 804 have looked at not only what is new in terms of knowledge, but what is the impact of that new knowledge. And in Laird, this court explained the question is whether counsel had a fair opportunity to inquire about observations, interest, bias, prejudice, and motive, even without the newly discovered information. And again, here, that is exactly what we have. Miller and Parker, while useful to defendant, do not open new doors for Essie's cross-examination that were not already open at the first trial. In the briefs, defendant argues that Miller and Parker would be relevant to misidentification, but that was very well flushed out through Essie's cross-examination at trial. The testimony on cross-examination came out that she did not know defendant personally, which goes to the reliability of her identification. She was questioned about the fact that she was drinking at the time, which also goes to the reliability of her identification. Counsel also thoroughly flushed out the limitations on her perspective and her observations. Defendant also asks this court to find that the identification of these individuals prohibited him from asking about her motive, bias, interest, prejudice. But as with misidentification, that was something that was at issue. That was a door that was open for defendant and was thoroughly tested. In fact, defense counsel went so far as to bluntly ask, who told you to say that defendant fired the gun? That was something that came out in cross-examination. So the idea that Essie might've been motivated or had some bias or prejudice that led her to testify and identify the defendant, that was a topic for cross-examination that was available and was flushed out by defendant during the first cross-examination of Essie. And in this regard, the case is similar to People v. Boston, where while that concerned preliminary hearing testimony, the counsel cross-examined the witness about whether or not the victim had been drinking or was using drugs at the time. And it later came out with a toxicology report eventually came out that the victim was drinking at the time, but the witness had testified that he wasn't. And the court explained that while that information would have been helpful at the prior hearing, because it would have allowed them to more critically challenge her testimony, it didn't really create a new topic that hadn't been explored. And that stands in contrast to some of the other cases discussed in the briefs like Starks, Torres, McCambery, where the new topic for cross-examination that was not at issue could not have been at issue because of court rulings or other matters. So it expanded the field of play, so to speak, and that's not what we have here. At the end of the day, the defendant's standard for similarity of motive for counsel's knowledge would basically require counsel always know everything, ask all of the exact same questions, and always have the same defense theory. And that's not the standard under any Illinois case. It's not the purpose of Rule 804 to facilitate the admission of testimony when a defendant's had an opportunity and motive to cross-examine. And certainly, a defendant never has more motive to test the reliability of testimony from an eyewitness than when that witness is testifying against him in a first-degree murder trial, which is what we have here. With that, your honors, I gladly welcome any questions you have. All right. Any questions? Just one or two. Counselor, I would agree with you that in the first trial, there were not any limitations placed on counsel's ability to cross. There was no restriction. But I'm a little troubled by your statement that counsel couldn't know everything. And I actually agree that counsel couldn't know everything, but two of the witnesses who confessed to committing the crime is a little bit more than knowing everything, isn't it? Yes, your honor. But the question about knowledge turns on to what is the impact it would have on the cross-examination. Miller and Parker, they're certainly consequential for the overall defense theory, but for the actual cross-examination of Essie, she was already questioned about what she observed, how reliable was her identification. And this is similar to Boston, because defense counsel in their brief positive... But I want to stop you because Boston is not trial. No, your honor. We have a little different standard going on. Yes, your honor. Boston's not trial, but the fact that it's a preliminary hearing, I think actually weighs in our favor, because here we have a trial. So the motive at trial to flush us out is even greater than at a preliminary hearing. In defense counsel's brief, they posited that they could have shown photos of individuals. Really, at the end of the day, rather than asking who told you to say defendant shot the gun, it would be akin to asking, did Miller or Parker tell you to say defendant shot the gun? Rather than questioning whether or not you might have misidentified defendant, it would be, are you sure it wasn't Miller or Parker? I mean, these are simply variations on the same question, as opposed to wading into new territory. And to the extent that Miller and Parker are topics that weren't available for cross-examination, the fact finder will certainly be aware of that. That's something I'm sure defense counsel will argue to the fact finder. And that really goes to the weight of the evidence, but not at the miscibility in this case, where the new knowledge isn't accompanied by some sort of tangible impact on the cross-examination. No other questions? Justice Ellis, any questions? Maybe just a couple. Mr. Slavens, good morning. Thank you. So, would you agree that the standard of review here is abuse of discretion? Yes, your honor. The standard is abuse of discretion here. Okay, so we have to find that no reasonable person would adopt the judge's view? Yes, your honor. And the people believe that is met here. Again, courts have always defined these terms broadly and these standards broadly. The purpose is to facilitate the admission of witness testimony when they are unavailable, like when they're deceased. And to adopt such a fine-grained motive and focus standard, to adopt such a fine-grained standard for counsel's knowledge, goes against all of the case law that has preceded this case, which, for example, Boston, like, I mean, I'm sorry, your honor, Starks, Torres, even Montgomery, they all involved not just knowledge. They also involved other factors not being satisfied. For example, in Starks, you had new knowledge, but you also had overt restrictions and limitations on the cross-examination through the rape shield statute. In Torres, you had not just new knowledge, but you had covert restrictions because the judge was a little bit argumentative, sustaining a lot of objections, creating that psychological barrier to fully flushing out testimony. In this case where all you have is some new knowledge, and it's not opening up a new topic that wasn't already explored to some not admissible under 804, that no reasonable person would find that counsel didn't have a meaningful opportunity or motive to cross-examine in this witness. So you would say that while counsel obviously could have asked additional and different questions, the general themes you would say were covered already. The misidentification, who put you up to this, who told you to, you would say you would just change a few words, but you're getting at the same thing. Yes, Your Honor. In this case with these witnesses, with the testimony that Essie offered, with the testimony that these new witnesses could offer, with respect to Essie's testimony, it likely would not change all that much. Questions would be more pointed, more direct, phrased differently certainly, but it's not delving into entirely new topics. And you say that even though these two individuals, Parker and Miller, did not simply confess, but they told a whole story about how it happened. It's different than what Essie was giving as the story. You don't think that makes any difference here? With respect to Essie's testimony, no. Again, she went on direct. She explained what she saw. Defense counsel had the opportunity to cross-examine her about what she saw. She saw three specific people who she identified, one of whom was related to her neighbor. She saw what she saw, and defense counsel cross-examined, tried to poke holes in it. And to the extent that these two individuals are now telling a different story, that is relevant to the case theory at broad. In this case, though, with respect to admission, it really goes more to the weight that would be afforded to this rather than its admissibility. Okay. Thank you. I just have one other question. So, does impeachment have any relationship here with respect to Essie's testimony in light of what Miller and Parker would testify to? Notably, Your Honor, I don't know if Miller and Parker are directly impeaching of her testimony so much as they are simply preventing conflicting testimony that the court would have to weigh. But again, I would circle back to Boston where that evidence was directly impeaching, and the court still found, yes, while counsel didn't know about it and it would have been nonetheless. So, again, courts have defined this broadly. They're really looking for some tangible impact, some real limitation. They're looking for new topics, not necessarily changes to the broader defense theory. It really goes to what is the impact for the individual witnesses cross-examination. Did the record indicate whether Essie knew Miller and Parker? No, Your Honor. The record did not indicate that Essie knew Miller and Parker. Don't you think it would have been valuable for the attorney to be able to question whether or not they knew to establish a motive? Because if she did, that might very well be a motive for her to talk, testify the way she did. This is significant. I mean, motive and opportunity, bias, you just talked about it, bias, prejudice, motive. If she knew the two guys who did it and she covered it up by blaming it on this defendant. So, there is an issue here. It's not just, did you have 10 seconds to look at him? It's something else that's possible to be explored here when you have somebody else totally different confessing to the crime. And no issue was raised or no question was raised whether or not she even knew these people. So, I think, don't you agree that there's significant area of exploration on cross with this case? This new information is certainly relevant to the broader case, but in terms of the cross-examination, no, I would not agree. It would allow for more precise questions about, did Miller and Parker tell you to identify defendant as opposed to the question counsel did ask, which was broadly, who told you to identify defendant as the shooter? As far as motives, counsel delved into the fact that Essie knew these individuals. She had narcotics transactions with these individuals. So, counsel was already getting into the motives and the biases, potential prejudice that she might've had to testify one way or another. And yes, Miller and Parker would have been helpful to that, but nothing in rule 804 or any of its jurisprudence requires such a fine-grained degree of similarity between knowledge, between the motive. Certainly nothing requires the exact same questions asked. In fact, the rule doesn't even require that counsel exercise cross-examination. It's only looking at whether or not you had an opportunity and a motive to exercise it. So, certainly Miller and Parker would have been helpful names to know at the time, but they're not expanding this cross-examination. Well, I'm the devil's advocate here and I'm the lawyer for the defendant. And here we have a situation where this witness, I'm discovering now two other people confessed, where this witness might've known these people that confessed and we didn't even get a chance to ask her whether she knew the people who actually did the shooting and whether she was covering up. I mean, that's a serious issue. Well, I think that would go more to the weight of her testimony at the retrial. So, certainly she wasn't able to be asked those very specific questions, but that's something for the fact finder to weigh her prior testimony against all the evidence that would come out in retrial. So, that really goes to the weight of the testimony. And again, she didn't say I saw a person. She specifically identified defendants. She knew the individuals involved in this. So, there's no reason to believe that she would suddenly have changed her testimony about who Miller and Parker's names came out. But again, that goes to the weight, not necessarily admissibility, your honors. But even if it were to go to the weight, in light of what Miller and Parker are offering, don't you think that that would be significant or would go to that factor about what defense counsel knew at the time he was questioning or cross-examining Essie? Even if it would go ultimately to the weight. Yes, Miller and Parker do go to the question of counsel's knowledge. But again, the cases that have looked at knowledge, Starks is kind of a seminal one on that where you had new serology results that showed that defendant could actually be excluded. And then as a result of that at retrial, you were going to have the rape shield statute lifted and the witness, the victim there would have been able to be not just unexplored, but could not have been explored. It was off limits. Plus the new serology results at trial, the testimony was the defendant could not have been excluded. Here we had an entire sea change in Starks where all of a sudden he could be excluded as a contributor to that semen sample. So, that's really a case where the new knowledge that has come forth is such a land shift where it's not just new information, but it's new information that fundamentally changes what the entire cross-examination would have been about. That is a proper instance to exclude prior testimony. Unlike this case where it would have been helpful, but it would not have fundamentally changed the entirety of the cross-examination. Could I ask one follow-up? Justice House was asking you about the possibility that S.E. knew these two individuals who've now confessed and you said that goes to the weight, that's something that could be argued at the retrial, but would a defendant be able to argue that at a retrial? I'm trying to imagine what this retrial looks like if you've got S.E.'s transcript. So, you put the transcript in, I assume you put a witness on the stand playing S.E. and you ask the questions, but there can be no cross obviously of S.E. and maybe these two people who confessed are going to take the witness stand and you can ask them if they knew S.E., or you can ask them if they put S.E. up to it, or maybe they don't take the witness stand. Maybe they decide to take the fifth and you have to get the evidence in another way of their culpability. Is there any place in this trial where the defense attorney can argue to the jury, even in closing argument? How do we know whether S.E. knew Parker and Miller? How do we know that she didn't put them up to it? I never got a chance to ask that question because she's deceased. I mean, I think if a defense attorney tried to say that in closing argument, the state would object and as to speculation and the judge would probably sustain that. I mean, I'm just trying to get a flavor of what this is going to look like if we allowed this testimony in. Is the defense ever going to be able to put in the jury's mind the possibility that she was put up to it, but we never got to ask her? Well, I would offer two points in response to that. First, at the first trial, counsel already put to the jury the possibility that she was put up to it because this was the theory that's been floating around since defendant's first trial. And then as for what this would actually look like at retrial, I can't speculate on the precise phrasing of any argument, but it wouldn't really be any different from arguing to the jury how they ought to weigh any other conflicting witness testimony. It's an ordinary thing in trial courts where you have one witness who says something else, another witness who says something else, and that is the role of argument is to argue to the jury, to the fact finder, how they ought to construe these conflicting narratives, how they ought to weigh the evidence, what ought to be believed. So I think that would be perfectly within the purview of our argument to argue how this testimony from the first trial ought to be considered in light of all the other testimonies. If there are no questions, all right. All right. You have a few minutes for rebuttal. Ms. Hennessey, you may proceed when you're ready. Thank you. Good morning, and may it please the court. The new topic of cross-examination stressed by the state counsel is present here. Defense counsel at Diggs' first trial was deprived of the ability to explore whether Essie knew the real killers, which means he was deprived of the opportunity to cross her on bias and motive to lie about them being the ones who committed the crime. Diggs was deprived of the opportunity to question Essie about whether she knew Parker or Miller, whether she mistook Diggs for Parker or Miller, whether Parker or Miller were on the scene of the shooting, and whether she had any bias or motive to identify Diggs over Parker and Miller. Diggs was deprived of the opportunity to confront Essie with photographs of Parker or Miller or to even confront her with their version of events, like the defendant in the Torres case. Diggs could have used this newly discovered evidence to confront Essie and see if further changes in her version of events might be forthcoming. Moreover, Diggs' inability to cross-examine Essie with respect to Parker and Miller affected the jury's ability to gauge the reliability of Essie's identification. We now know that Parker and Miller are the two men responsible for this crime, and the state's primary eyewitness was never confronted with that fact. I want to address something that the state said in its argument regarding Ms. Essie knowing all of the involved individuals in this case. It's true that Essie knew Flowers and Buda or Earl Smith, but she actually admitted at trial that she had never personally met Diggs and did not know him well. So, the fact that Essie did not know Diggs makes a misidentification more likely. And so, the fact that we now know the identity of the true killers in this case would definitely go to the reliability of her identification of Diggs. In its briefs and again today at oral argument, the state goes to great lengths to make light of the significance of the newly discovered evidence that Diggs has uncovered. The discovery of the identities of the two men actually responsible for the murder that Diggs is now charged with, including their confessions, puts the state's original trial evidence in such a different light so as to establish that Diggs was deprived of a meaningful, effective, and ample opportunity to cross-examine the state's principal and primary eyewitness. The position that the state takes would essentially eviscerate the Constitution's guarantee of a criminal defendant to be confronted with the witnesses against him. At any hearing, any defendant could necessarily argue that some third party is responsible for this. And so, the state's argument that this was an avenue open to Diggs would do away with or eviscerate the Confrontation Clause because any defendant could necessarily make that argument. But now we have the identity of the true killers. Now we're able to confront Essie with their photographs, their version of events, whether she knew them. This is not an avenue of cross-examination that was available to Diggs at his first trial. And as the Illinois Supreme Court has explained, the ability to cross-examine a now unavailable witness must have been meaningful, effective, and ample. Given the significance of the newly discovered evidence at issue here, Diggs' cross-examination of Essie at his 2003 trial was not meaningful, effective, or ample. Addressing the state's argument regarding Boston, the evidence in Boston is very different from the evidence at issue here. In Boston, it was mostly an undisclosed toxicology report that contradicted the victim's mother's mistaken testimony that she believed her son was no longer using drugs. It did not go to the reliability of her eyewitness identification. Here we have the identity of the true killers. That goes directly to the state's primary eyewitnesses' identification of Diggs. And with respect to Starks, it is true that one of the factors the 2nd District considered was the inappropriate application of the Rape Shield Statute. But the 2nd District did find that the new DNA evidence independently was enough to find that the defendant was not afforded the ability to cross-examine the deceased witness or the complainant in that case. Whether a trial court has properly allowed or excluded former testimony of an unavailable witness is subject to an abusive discretion standard, which is an extremely deferential standard. The state has utterly failed to meet that burden. Considering the significance of newly discovered evidence and the implications it has on Essie's eyewitness identification of Diggs as a shooter, the court's ruling was reasonable. Finally, with respect to the state's argument in its reply brief that Diggs has misrepresented the record as it relates to the state's request to admit Essie's former testimony under Section 115-10.4, I refer the court to page C-345 of the record, which is the state's motion in limine to admit Essie's prior testimony and where the state argued, quote, further, admission of the transcripts is proper under 725 ILCS 5-115-10.4, close quote. So the trial court's ruling taking into consideration both Rule 804-B1 and Section 115-10.4 was not an abusive discretion. The court did not only consider admissibility under Section 115-10.4 as the state seems to suggest in its briefs. Her ruling makes clear that she was considering both avenues of admissibility and found neither appropriate. With that, I'm happy to take any questions you may have. Otherwise, we ask that you affirm the trial court's exclusion of Essie's testimony from the 2003 trial. Thank you. Any questions? I have no questions. I don't have any questions. I don't either. Mrs. Slavens, you may perceive that the rebuttal is on mute. I think you're on mute, counsel. Sorry. Thank you. Just a few points on rebuttal, Your Honor. First, defense counsel suggests that Essie could have been cross-examined with Miller on Parker's identities regarding confusion, shown photos, been confronted with her narratives. Again, that is helpful to the entirely new topics. It really goes to her motivation, to prejudice, which were topics that were already explored. Defendant also suggests that to adopt the position and admit this testimony would eviscerate the confrontation clause, and that's simply not the case here. Defendant had a full and fair opportunity to confront Essie about the testimony she gave. She was at his first trial. Defendant exercised his right to cross-examine her, and her testimony is being the exact same testimony that she was crossed on is what would be admitted here. He had and exercised his full confrontation clause rights already. With respect to Boston Starks, again, that evidence in Boston, it was helpful. It did not create new topics, whereas in Starks, the new evidence created new topics, and the second district was very clear in its ruling that it wasn't ruling simply on one basis or another. It was the conglomeration of a number of factors that led it to reversal. You can't just parse out one aspect of Starks because it was the intersection of a variety of factors. Finally, with respect to the state's motion to eliminate, the people explicitly argued that where there's a conflict between a rule of evidence adopted by the Supreme Court and a statute adopted by the legislature as a matter of separation of powers, it is the rule that ought to govern. That was argued in our motion to eliminate. It's again argued here, so even though the statute was cited, the argument, the basis for admission that people was 804, that is the standard that should control, so the circuit court's importing of an inapplicable standard and consideration of those factors was in fact itself an abuse discretion. What if the court considered both? Well, Your Honor, Rule 804 and the statutory catch-all exception, they're not interchangeable. They're overlapping, but they're not coextensive, and the statute includes provisions like the interest of justice, no other available testimony. Those are additional limitations on the admission, so that creates a conflict, which means the rule has to prevail. The court couldn't have gotten into the statutory basis unless it found for some reason that ESE's testimony did not fall within the scope of 804. So, they're two standards, but they're not interchangeable, and if there are no further questions for these reasons and all the reasons stated in our briefs, we would respectfully ask that this court reverse the circuit court's decision and remand with instructions to admit ESE's testimony. I got another question. Let's change the facts in this case just a little bit. Let's say this affidavit didn't come from these two individuals, but let's say the affidavit came from, say, the husband of the deceased witness. Would that change your view of the argument? Would that change your position if it was the husband of this lady who wrote the confession? Perhaps, Your Honor. I mean, so just so I understand your hypothetical, you're suggesting that if it were the husband confessing? The husband of ESE, ESE's husband. Yes. And now we're looking at this case, not only ESE's husband who did the confessing, would that change your opinion of how we go in this case? I think it would have to, Your Honor. Okay, so here's my point. Here, we don't know whether she knew these other two people. It could be extremely significant. And that's where we left it. And we're saying the court is, would any reasonable judge do this the way she did? And how can we say no reasonable judge would go along with this, with the decision that was made when we didn't get an opportunity to even find out if she knew the wife and the husband? And see that that does open up entirely new aspects for cross-examination, because then it's not simply, you know, who did you identify? But the entire narrative itself is called into question at that point. But you know what, that goes to Justice House's kind of hypothetical. We don't know what ESE knew about Miller or Parker. If she knew him, if she didn't know him, if they had ever, and I think Justice Ellis might have raised this earlier as well. So, I mean, they wouldn't have had any opportunity to cross ESE on what she knew, if she knew anything about Miller or Parker, or if she'd seen them at the scene, if she didn't. I'm a little struck by, still stuck on, this is just conflicting evidence about which we, the trial would simply weigh. I think it's a little more, it's a little different than that. I mean, yes, it's conflicting, but it's a little more than just the little rule that we apply to, you know, resolving conflicts. It is certainly consequential to the whole case. But again, the question of knowledge really goes to what would change on the cross-examination? And those questions could be more specific. But again, counsel did cross-examine ESE about whether or not she correctly identified defendant as the shooter. And he delved into topics about possible prejudice motive, reasons to testify otherwise. So, these were topics that were issued. There was a motivation to develop them. And Miller and Parker are certainly able to get on the stand and present their testimony. But the question about, it's not what would they say, the question is about how would this change ESE's cross-examination? And the testimony would be concerning largely the same topics, just with questions phrased differently. And with any retrial, that's always going to be the case, because knowledge is never identical from one case to the retrial. There's always new information, even if it's just a matter of what defenses proved effective or ineffective at the first time. And it's because of that, that no reasonable person would adopt such a fine-grained level of similarity of knowledge. Counsel is not required to stand in the exact same position in terms of their knowledge between the first trial and the retrial for admission. And if there are no further questions for these reasons and all those stated in the briefs, we would respectfully ask that you reverse the circuit court's decision. Thank you. All right. No other questions? All right. This case was very interesting. Arguments were well prepared. We will take the case under advisement and issue a decision in due course. Thank you both very much. Have a great day. Thank you. Thank you.